## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| VIRTAMOVE, CORP., | |
| Plaintiff, | Case No. |
| v. | **JURY TRIAL DEMANDED** |
| INTERNATIONAL BUSINESS MACHINES CORP., | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT AGAINST
## INTERNATIONAL BUSINESS MACHINES CORP.

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff VirtaMove Corp. ("Plaintiff" or "VirtaMove") makes the following allegations against Defendant International Business Machines Corp. ("Defendant" or "IBM"):

### INTRODUCTION AND PARTIES

1.     This complaint arises from Defendant's unlawful infringement of the following United States patents owned by VirtaMove, each of which generally relate to novel containerization systems and methods: United States Patent Nos. 7,519,814 and 7,774,762 (collectively, the "Asserted Patents"). VirtaMove owns all right, title, and interest in each of the Asserted Patents to file this case.

2.     VirtaMove, Corp. is a is a corporation organized and existing under the laws of Canada, having its place of business at 110 Didsbury Road, M083, Ottawa, Ontario K2T 0C2. VirtaMove is formerly known as Appzero Software Corp. ("Appzero"), which was established in

1

2010.

3.    VirtaMove is an innovator and pioneer in containerization. At a high level, a container is a portable computing environment. It can hold everything an application needs to run to move it from development to testing to production smoothly. Containerization lowers software and operational costs, using far fewer resources. It provides greater scalability (for example, compared to virtual machines). It provides a lightweight and fast infrastructure to run updates and make changes. It also encapsulates the entire code with its dependencies, libraries, and configuration files, effectively removing errors that can result from traditional configurations.

4.    For years, VirtaMove has helped customers repackage, migrate and refactor thousands of important, custom, and packaged Windows Server, Unix Sun Solaris, & Linux applications to modern, secure operating systems, without recoding. VirtaMove's mission is to move and modernize the world's server applications to make organizations more successful and secure. VirtaMove has helped companies from many industries achieve modernization success.

5.    The use of containerization has been growing rapidly. For instance, one source predicted the application containers market to reach $2.1 billion in 2019 and $4.3 billion in 2022—a compound annual growth rate ("CAGR") of 30%. *See, e.g.*, https://digiworld.news/news/56020/application-containers-market-to-reach-43-billion-by-2022. Another source reported the application containers market had a market size of $5.45 billion in 2024 and estimated it to reach $19.41 billion in 2029—a CAGR of 28.89%. *See, e.g.*, https://www.mordorintelligence.com/industry-reports/application-container-market.

6.    Defendant International Business Machines Corp. is a New York corporation.  IBM has a principal place of business at One New Orchard Road, Armonk, New York 10504.  IBM may also be served with process via its registered agent Amanda Garcia, at 330 North Brand Blvd,

Glendale, California 91203.

## JURISDICTION AND VENUE

7.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the asserted patents.

9.      Venue is proper in this District. For example, IBM has a regular and established place of business, including, e.g., at 1700 Summit Avenue, Plano, Texas 75074.

## ADDITIONAL FACTS

10.     It is reported by 451 Research that:

Since September 2011, IBM Distinguished Engineer Mac Devine has served as the Director and CTO for the SmartCloud portfolio within IBM Global Technology Services (GTS). In practice, that makes him responsible for SmartCloud's technical strategy and architecture, and for choosing SmartCloud partners. Most recently, Devine has been involved in a partnership between AppZero and IBM to provide application migration services to enterprises as they adopt cloud computing.

Ex. 5 at 1.  It is further reported that:

> It was Devine who performed the due diligence exercise in 2011 that
> reviewed IBM's options for migration tools. He narrowed down the options
> to CohesiveFT and AppZero, and then he introduced the companies to each
> other. Through the resulting Elastic Enterprise Applications partnership,
> Cohesive handles networking and automation for Linux, while AppZero
> offers a Windows virtualized application container. Devine is proud that the
> partners got an offering up and operational in six weeks.

*Id.* at 3.

11.    Additionally, representatives of IBM met with representatives of VirtaMove in
2016, 2-17, 2018, and 2021 to discuss and demo AppZero and its technology for either partnership,
use, distribution, and/or investment.  Either IBM would have known, as a result of its "due
diligence" and ongoing discussions, that AppZero was patented as early as 2011, or IBM
intentionally stayed willfully blind to this fact.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 7,519,814

12.    VirtaMove realleges and incorporates by reference the foregoing paragraphs as if
fully set forth herein.

13.    VirtaMove owns all rights, title, and interest in U.S. Patent No. 7,519,814 ('814
patent), titled "System for Containerization of Application Sets," issued on April 14, 2009. A true
and correct copy of the '814 Patent is attached as **Exhibit 1.**

14.    The technology in the '814 patent was not routine or conventional.  Independent
business intelligence provider Gartner reported that AppZero had no direct technological

4

competitors in "Cool Vendors in Cloud Computing" in April 2009. AppZero's software and services, unlike its competitors' conventional offerings, allowed its customers to deploy the technology described in the '814 patent.




Note: No direct competition per Gartner "Cool Vendors in Cloud Computing" 4/09/2009

15.    Additionally, the USPTO examined the patented technology and concluded that the prior art "fails to anticipate, disclose, teach, or suggest alone, or in combination, at the time of the invention, the features as set forth of the claim . . . .  Nowhere in the prior art is found collectively the italicized claim elements (i.e., the various aspects of applications software not being sharable between the plurality of secure (and isolated) containers of application software, and unique root file systems different from an operating system's root file system, so as to allow for different versions of the same operating running on the same system/server environment), at the time of the invention, serving to patently distinguish the prior art." Ex. 6 at 2–5.  Thus, multiple aspects of

5

the claims were not found anywhere in the prior art of record, alone or in combination, such that they cannot be described as "routine" or "conventional." *Id*.

16.    The technology claimed is not directed to an abstract idea. Rather, it is directed to a technological improvement in computer technology, and it provides a technological solution to a fundamentally technological problem. Indeed, the problems of securely sharing resources among a plurality of services in disparate computing environments and application portability across operating systems and disparate computing environments are inherently rooted in computer technology with no non-technological analog, nor can the solution be performed solely within the human mind. In part, the "invention provides a solution whereby a plurality of services can conveniently be installed on one or more servers in a cost effective and secure manner." Ex. 1 at 2:13–15. This is despite how "a collection of applications . . . must be separated with each application installed on an individual computer system," and despite how "certain applications require a specific version of operating system facilities and as such will not co-exist with applications that require another version." *Id*. at 1:27–41. Moreover, the technology is distinguished from the Virtual Machine approach in that, with Virtual Machines, "an operating system, including files and a kernel, must be deployed for each application" while the technology of the '814 patent requires only requires one operating system regardless of the number of application containers deployed, and it "offers the ability for applications to more effectively share a common compute platform, and also allow applications to be easily moved between platforms, without the requirement for a separate and distinct operating system for each application." *Id*. at 1:51–2:3.

17.    On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., IBM's IBM Cloud, IBM Cloud

Private (ICP), IBM z/OS Container Platform, and IBM Cloud Code Engine, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '814 patent, for example:



A container platform built to support the most secure, reliable and scalable environments.

https://www.ibm.com/cloud/containers;

IBM Cloud Private is an application platform for developing and managing on-premises, containerized applications. It is an integrated environment for managing containers that includes the container orchestrator Kubernetes, a private image registry, a management console, and monitoring frameworks.

https://www.ibm.com/docs/en/cloud-private/3.1.2?topic=started-cloud-private-overview;

IBM Cloud® Code Engine is a fully managed, serverless platform. Bring your container images, batch jobs, source code or function together in one place and let IBM Cloud Code Engine manage and help secure the underlying infrastructure. There's no need to size, deploy or scale container clusters yourself. And no advanced networking skills are required.

https://www.ibm.com/products/code-engine;

The IBM z/OS® Container Platform enables users to realize the benefits of a cloud native development strategy on z/OS as part of their digital transformation strategy. You can build, deploy, run and manage containerized z/OS UNIX® applications by leveraging an open-source container runtime and Kubernetes orchestration. Running containers natively on IBM z/OS allows users to gain the benefits of industry-standard open-source container technologies while also taking advantage of the security, reliability and performance benefits of IBM Z.

https://www.ibm.com/products/zos-container-platform.

18.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

19.     Defendant's infringement has been and is willful. Defendant knew of VirtaMove, its products, and at least one of the patents long before this suit was filed and at least as early as 2012.  For example, on or about February 2012, in connection with the prosecution of U.S. Patent App. No. 12/146,322 (assigned to IBM), the examiner cited U.S. Pub. No. 2005/0060722 (which issued as the '814 Patent) against IBM. On or about November 26, 2012, in connection with the prosecution of U.S. Patent No. 8,893,306 (assigned to IBM), the examiner cited the '814 Patent against IBM.  On or about June 2015, in connection with the prosecution of U.S. Patent No. 9,166,865 (assigned to IBM), the examiner cited U.S. Pub. No. 2005/0060722 against IBM. Defendant knew, or should have known, that its conduct amounted to infringement of the '814 patent.  Accordingly, Defendant is liable for willful infringement.

20.     Defendant also knowingly and intentionally induces infringement of claims of the '814 patent in violation of 35 U.S.C. § 271(b).  Defendant has had knowledge of the '814 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above.  Despite this knowledge of the '814 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through

user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '814 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '814 patent, thereby specifically intending for and inducing its customers to infringe the '814 patent through the customers' normal and customary use of the Accused Products.

21.    Defendant has also infringed, and continue to infringe, claims of the '814 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '814 patent, in violation of 35 U.S.C. § 271(c).

22.    The Accused Products satisfy all claim limitations of claims of the '814 patent. A claim chart comparing an independent claim of the '814 patent to a representative Accused Product, is attached as **Exhibit 2**, which is hereby incorporated by reference in its entirety.

23.    By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured VirtaMove and is liable for infringement of the '814 patent pursuant to 35 U.S.C. § 271.

24.    As a result of Defendant's infringement of the '814 patent, VirtaMove is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with

interest and costs as fixed by the Court.  VirtaMove is entitled to past damages under 35 U.S.C. § 287.  VirtaMove has complied with the requirements of 35 U.S.C. § 287 and is not aware of any unmarked products that practice the claims of the '814 patent.  In the alternative, either VirtaMove's product was marked before the filing date of this lawsuit, or no requirement for marking applies.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 7,774,762**

25.    VirtaMove realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

26.    VirtaMove owns all rights, title, and interest in U.S. Patent No. 7,774,762 ('762 patent), titled "System for Containerization of Application Sets," issued on April 14, 2009.  A true and correct copy of the '762 patent is attached as **Exhibit 3.**

27.    The technology in the '762 patent was not routine or conventional.  Independent business intelligence provider Gartner reported that AppZero had no direct technological competitors in "Cool Vendors in Cloud Computing" in April 2009. AppZero's software and services, unlike its competitors' conventional offerings, allowed its customers to deploy the technology described in the '762 patent.



Note:  No direct competition per Gartner "Cool Vendors in Cloud Computing" 4/09/2009

28.    Additionally, the USPTO examined the patented technology and concluded that the prior art did not disclose or render obvious the claims of the '762 patent.  Thus, the claims were not found anywhere in the prior art of record, alone or in combination, and cannot be described as "routine" or "conventional."

29.    The technology claimed is not directed to an abstract idea. Rather, it is directed to a technological improvement in computer technology, and it provides a technological solution to a fundamentally technological problem. Indeed, the problem of enabling a first software application, which is designed for execution on a first computer platform having a first operating system, to be executed on an incompatible computer platform having a second incompatible operating system is inherently rooted in computer technology with no non-technological analog, nor can the solution be performed solely within the human mind. In part, "an object of this

invention to provide a system whereby one or more software applications can be run or executed on an incompatible computer platform which heretofore, the applications could not be run on." Ex. 3 at 1:51–54.  This "allows a single application that was only executable on a specific computer platform to now be used by a plurality of different computer platforms" and "[s]pecial software applications need not be written, taking weeks, months or years to create and deploy; now in accordance with this invention, by providing linkages to libraries and applications, and providing a secure capsule run time environment, software applications can be run on systems where they could not before." *Id*. at 1:54–64.

30.    On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., IBM's IBM Cloud Kubernetes Service, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '762 patent, for example:

## Run Kubernetes at enterprise scale

Experience a certified, managed Kubernetes solution, built for creating a cluster of compute hosts to deploy and manage containerized apps on IBM Cloud®. IBM manages the master, freeing you from having to administer the host OS, container runtime and Kubernetes version-update process.

https://www.ibm.com/products/kubernetes-service.



https://www.ibm.com/cloud/containers;

IBM Cloud Private is an application platform for developing and
managing on-premises, containerized applications. It is an
integrated environment for managing containers that includes the
container orchestrator Kubernetes, a private image registry, a
management console, and monitoring frameworks.

https://www.ibm.com/docs/en/cloud-private/3.1.2?topic=started-cloud-private-overview;

IBM Cloud® Code Engine is a fully managed, serverless platform. Bring
your container images, batch jobs, source code or function together in
one place and let IBM Cloud Code Engine manage and help secure the
underlying infrastructure. There's no need to size, deploy or scale
container clusters yourself. And no advanced networking skills are
required.

https://www.ibm.com/products/code-engine;

The IBM z/OS® Container Platform enables users to realize the benefits of a cloud native development strategy on z/OS as part of their digital transformation strategy. You can build, deploy, run and manage containerized z/OS UNIX® applications by leveraging an open-source container runtime and Kubernetes orchestration. Running containers natively on IBM z/OS allows users to gain the benefits of industry-standard open-source container technologies while also taking advantage of the security, reliability and performance benefits of IBM Z.

https://www.ibm.com/products/zos-container-platform.

31.    The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

32.    Defendant's infringement has been and is willful. Defendant knew of VirtaMove, its products, and at least one of the patents long before this suit was filed and at least as early as 2015.  For example, on or about February 2015, in connection with the prosecution of U.S. Patent App. No. 14/618,011 (assigned to IBM), the examiner cited the '762 patent against IBM. On or about November 29, 2016, in connection with the prosecution of U.S. Patent No. 9,934,054 (assigned to IBM), the applicant cited the '762 patent in an Information Disclosure Statement. Defendant knew, or should have known, that its conduct amounted to infringement of the '762 patent.  Accordingly, Defendant is liable for willful infringement.

33.    Defendant also knowingly and intentionally induces infringement of claims of the '762 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '762 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '762 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '762 patent. Defendant does so, knowing and intending that its customers

and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '762 patent, thereby specifically intending for and inducing its customers to infringe the '762 patent through the customers' normal and customary use of the Accused Products.

34.     Defendant has also infringed, and continue to infringe, claims of the '762 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '762 patent, in violation of 35 U.S.C. § 271(c).

35.     The Accused Products satisfy all claim limitations of claims of the '762 patent.  A claim chart comparing an independent claim of the '762 patent to a representative Accused Product, is attached as **Exhibit 4**, which is hereby incorporated by reference in its entirety.

36.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured VirtaMove and is liable for infringement of the '762 patent pursuant to 35 U.S.C. § 271.

37.     As a result of Defendant's infringement of the '762 patent, VirtaMove is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court. VirtaMove is entitled to past damages under 35 U.S.C. § 287. VirtaMove has complied with the requirements of 35 U.S.C. § 287 and is not aware of any

unmarked products that practice the claims of the '814 patent.   In the alternative, either VirtaMove's product was marked before the filing date of this lawsuit, or no requirement for marking applies.

## **PRAYER FOR RELIEF**

WHEREFORE, VirtaMove respectfully requests that this Court enter:

a.    A judgment in favor of VirtaMove that Defendant has infringed, either literally and/or under the doctrine of equivalents, each of the Asserted Patents;

b.    A judgment in favor of Plaintiff that Defendant has willfully infringed the '814 and '762 patents;

c.    A permanent injunction prohibiting Defendant from further acts of infringement of each of the '814 and '762 patents;

d.    A judgment and order requiring Defendant to pay VirtaMove its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of each of the Asserted Patents;

e.    A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to VirtaMove, including without limitation, pre-judgment and post-judgment interest;

f.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to VirtaMove its reasonable attorneys' fees against Defendant; and

g.    Any and all other relief as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

VirtaMove, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

 Dated: June 10, 2025                                     Respectfully submitted,

                                                                  */s/ Reza Mirzaie*

                                                                  Reza Mirzaie (CA SBN 246953)
                                                                  rmirzaie@raklaw.com
                                                                  Marc A. Fenster (CA SBN 181067)
                                                                  mfenster@raklaw.com
                                                                  Neil A. Rubin (CA SBN 250761)
                                                                  nrubin@raklaw.com
                                                                  Jacob R. Buczko (CA SBN 269408)
                                                                  jbuczko@raklaw.com
                                                                  James S. Tsuei (CA SBN 285530)
                                                                  jtsuei@raklaw.com
                                                                  James A. Milkey (CA SBN 281283)
                                                                  jmilkey@raklaw.com
                                                                  Christian W. Conkle (CA SBN 306374)
                                                                  cconkle@raklaw.com
                                                                  Jonathan Ma (CA SBN 312773)
                                                                  jma@raklaw.com
                                                                  Daniel Kolko (CA SBN 341680)
                                                                  dkolko@raklaw.com
                                                                  Mackenzie Paladino (NY SBN 6039366)
                                                                  mpaladino@raklaw.com
                                                                  Jefferson Cummings (DC SBN 90027452)
                                                                  jcummings@raklaw.com
                                                                  **RUSS AUGUST & KABAT**
                                                                  12424 Wilshire Boulevard, 12th Floor
                                                                  Los Angeles, CA 90025
                                                                  Telephone: (310) 826-7474

                                                                  Qi (Peter) Tong (TX SBN 24119042)
                                                                  ptong@raklaw.com
                                                                  **RUSS AUGUST & KABAT**
                                                                  8080 N. Central Expy., Suite 1503
                                                                  Dallas, TX 75206
                                                                  Telephone: (310) 826-7474

                                                                  *Attorneys for Plaintiff VirtaMove, Corp.*